Deborah June ALEXANDER, Plaintiff,

v.

The BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, and The Department of Education of the City of New York, Defendants.

No. 14 Civ. 8553.

United States District Court, S.D. New York.

Signed May 13, 2015.

Filed May 14, 2015.

62. *See* Opp. Mem. at 23.

63. *Tamam,* 677 F.Supp.2d at 733 (citing *Jazini,* 148 F.3d at 186).

Stewart Lee Karlin, Esq., Natalia Kapitonova, Esq., New York, NY, for Plaintiff.

Zachary W. Carter, Corporation Counsel of the City of New York, by: Tanya N. Blocker, Esq., Bruce Rosenbaum, Esq., New York, NY, for Defendant.

## OPINION

SWEET, District Judge.

Defendant the Board of Education of the City School District of the City of New York ("BOE" or "Defendant") (also known as and sued herein as the "The Board of Education of the City School District of the City New York, and The Department of Education of the City of New York") has moved pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff Deborah June Alexander ("Alexander" or the "Plaintiff") alleging that BOE unlawfully terminated her employment in retaliation for exercising her rights pursuant to the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. §§ 2601 et seq. Based on the conclusions and findings set forth below, Defendant's motion is granted, and the complaint dismissed.

## Prior Proceedings

On August 4, 2014, Plaintiff filed a complaint in the Supreme Court of the State of New York, Kings County (the "Complaint"). The Defendant removed the action to this Court on October 24, 2014 pursuant to 28 U.S.C. § 1441.

The Complaint contains the following allegations: [1]

Plaintiff began her employment with the BOE as a school nurse in 2000. Compl. ¶ 9. In March 2010, Plaintiff applied for intermittent FMLA leave. *Id.* at ¶ 11. Plaintiff's proffered reason for the leave was to care for her daughter, who had suffered from severe rheumatoid arthritis, and to escort her to physical therapy. *Id.* at ¶¶ 11, 18. Plaintiff requested that the intermittent leave period include every Monday and Wednesday from September 7, 2010 to December 17, 2010 (the "FMLA leave period"). *Id.* at ¶ 11.

Following Plaintiff's request, the Office of School Health ("OSH") Bronx Borough Nursing Director Eileen Cotter ("Ms. Cotter") appeared "visibly upset" about the request and "questioned why she was applying for FMLA so early for September, that the FMLA form look[ed] suspicious, and [noting] how it only takes an hour to have therapy." On August 6, 2010, while reviewing Plaintiff's FMLA leave application, the BOE requested that Plaintiff provide a doctor's note confirming her daughter's medical condition and the need for Plaintiff to care for and escort her daughter to her physical therapy sessions, which Plaintiff provided. *Id.* at ¶¶ 13, 14. The note did not state what times on Mondays and Wednesdays the physical therapy sessions were to take place or how long they would generally last. *See* SCI Report at Item B–1. After receiving the note, the BOE approved Plaintiff's FMLA leave application. Compl. ¶¶ 15, 18.

From September 7, 2010 and continuing through the remainder of the FMLA leave period ending on December 17, 2010, Plaintiff completed a course and clinical practicum at the College of New Rochelle. Compl. ¶¶ 18, 23; *see also* SCI Report at Items E–1 through E–10. The course and practicum began in July 2010, with two sessions taking place on July 13, 2010 from 1:30 p.m. to 4:30 p.m. and on July 23, 2010 from 8:30 a.m. to 1:30 p.m. *Id.* at Items E–1 through E–10. The clinical practicum sessions continued on Mondays and Wednesdays from September 15 to December 6 of 2010. *Id.* On most days, the sessions ran from 7:00 a.m. to 5:00 p.m., but sometimes they took place from 7:00 a.m. to noon or 1:00 p.m., or from 10:00 a.m. to 6:00 p.m. *Id.* Plaintiff admitted that she did not escort her daughter to physical therapy during the approved FMLA leave period. Compl. ¶ 19. Her failure to accompany her daughter to physical therapy during the relevant period was due to her daughter's refusal to attend the sessions. *Id.* Plaintiff did not communicate to anyone at the BOE, or any of its agents, that the purpose for which the leave had been approved no longer existed, or any desire to terminate the leave. Instead, Plaintiff returned to work at the end of the leave period. *See generally* Compl. ¶¶ 11, 20, 22.

Two months after returning from FMLA leave, Plaintiff submitted an application for tuition reimbursement for classes she had completed in the Fall of 2010. SCI Report at Item B–5. As a result of the tuition reimbursement re-

---

1. Pursuant to FRCP Rule 12(b)(6), Plaintiff's allegations are assumed to be true for purposes of this motion. In addition to the allegations in Plaintiff's complaint, the following documents annexed to Defendant's motion to dismiss are incorporated by reference: the Aug. 19, 2011 Termination Letter, Exhibit B (hereinafter "Termination Letter") to the Dec-laration of Tanya N. Blocker dated December 01, 2014 (hereinafter "Blocker Decl."); Exhibit C, Special Commissioner of Investigation Report and Findings dated June 16, 2011 (hereinafter "SCI Report") to Blocker Decl. These documents are considered in connection with both motions of the Defendant.

quest, the BOE referred the matter to the SCI in order to investigate the circumstances surrounding Plaintiff's FMLA leave. *See* SCI Report. From March 29, 2011 through June 16, 2011, SCI conducted an internal investigation regarding Plaintiff's use of approved FMLA leave during the fall of 2010. *Id.* The SCI investigation established that Plaintiff had taken courses at the College of New Rochelle on Mondays and Wednesdays between September 15, 2010 and December 6, 2010, while on FMLA leave. The SCI investigation also established that on most days during the relevant period, Plaintiff performed a clinical practicum on Mondays and Wednesdays from 7:00 am to 5:00 pm, 7:00 am to noon or 1:00 pm, or from 10:00 am to 6:00 pm. *Id.* SCI also determined that Plaintiff had attended two initial sessions in July 2010 in anticipation for the start of the Fall 2010 semester. *Id.* at Item E–1. In an interview with an SCI investigator, Plaintiff admitted to attending the clinical practicum course at the College of New Rochelle on Mondays and Wednesdays during the time frame in which she had requested and obtained FMLA leave and acknowledged that she did not notify the BOE of her daughter's refusal to attend the physical therapy sessions during the FMLA leave period. Ex. B. SCI also determined that Plaintiff had previously been denied leave to complete the clinical program to obtain her degree. *Id.* at n. 2.

On June 16, 2011, the SCI Report recommended that disciplinary action be taken against Plaintiff. The BOE's Direct of Nursing, Carole A. Marchese, by letter dated August 19, 2011, terminated Plaintiff's employment stating:

> I concur with SCI's determination and believe that your actions were an attempt to improperly use FMLA to complete your degree when you knew that the Office of School Health does not grant time off to complete a practicum. This falsification constitutes misconduct that is not only unprofessional but in violation of guidelines for FMLA. In addition, OSH incurred over $9,000.00 in expenses for a substitute nurse to cover you during your absence.

> Effective today, you are hereby terminated from your employment with the New York City Department of Education.

Termination Letter at p. 2 of 5.

The instant motions were heard and marked fully submitted on January 21, 2015.

**The Applicable Standards**

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir.1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omit-

ted). Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz–Nagel v. Guess, Inc.*, No. 12–1312, 2013 WL 1809772, *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010)) and *Prince v. Madison Square Garden*, 427 F.Supp.2d 372, 384 (S.D.N.Y.2006); *see also Williams v. Calderoni*, No. 11–3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed.2004)).

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F.Supp. 1205, 1212 (S.D.N.Y.1990) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

## The Complaint Fails to Allege Adequately an FMLA Discrimination Claim

A plaintiff may advance a cognizable claim for FMLA violations pursuant to 29 U.S.C. § 2615(a) under two distinct theories: "interference" and "retaliation." *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.2004); *Emmons v. City Univ. of New York*, 715 F.Supp.2d 394, 417 (E.D.N.Y.2010), modified (July 2, 2010). Here, Plaintiff attempts to allege a retaliation claim. *See generally* Pl.'s Mem. in Opp'n 9–10. As with other anti-discrimination causes of action, an FMLA retaliation claim is analyzed under the *McDonnell Douglas* three-step burden shifting framework. *See Roberts v. Health Ass'n*, 308 Fed.Appx. 568, 570 (2d Cir.2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To prevail on a FMLA retaliation claim, the complaint must plead facts plausible to establish: (1) that a plaintiff exercised rights protected under the FMLA; (2) plaintiff was qualified for the position; (3) plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza*, 365 F.3d at 168. Assuming that a plaintiff has pled sufficient facts to satisfy the first three prongs of a retaliation claim, where a complaint fails to show a "causal connection between the protected activity and the adverse employment action" the claim fails. *Perry v. NYSARC, Inc.*, 424 Fed.Appx. 23 (2d Cir. 2011) (quoting *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir.1996)); *Potenza*, 365 F.3d at 168.

Retaliatory intent or a causal nexus between the protected activity and the adverse employment action can be established: (i) indirectly through a showing that the protected activity was followed

closely by discriminatory treatment, commonly known as "temporal proximity;" (ii) indirectly through other evidence such as disparate treatment of similarly-situated employees; or (iii) directly through a showing of evidence of retaliatory animus toward plaintiff by defendant. *Carr v. WestLB Admin., Inc.*, 171 F.Supp.2d 302, 309 (S.D.N.Y.2001) (citing *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987)).

■ The Complaint asserts that the Defendant's stated reason for terminating Plaintiff's employment for taking college courses is false. Compl. 23, 25. Plaintiff contends that the practicum courses taken during the FMLA leave period could have been completed "at various times and [the practicum schedule] was very flexible including evening, nights, and weekends." *Id.* at ¶ 23. Consequently, Plaintiff contends that the BOE's reason for terminating her was pretextual. *Id.* Plaintiff further alleges that because Plaintiff's FMLA application was submitted in March 2010, well before she knew about or could have registered for fall classes, Plaintiff could not have reasonably submitted a fraudulent FMLA leave application to take college courses. *Id.* at ¶ 25.

■ The SCI's Report determined that Plaintiff attended a clinical practicum course on Mondays and Wednesdays during the relevant period primarily between the hours of 7:00 a.m.–5:00 p.m., which coincides with the time Plaintiff would have been completing her duties as a BOE school nurse in the absence of her FMLA leave. SCI Report at Items E–2–E–10. "Where an employee is terminated because ... the employee was not using the leave for its 'intended purpose,' an FMLA claim will not lie." *LeBoeuf v. New York Univ. Med. Ctr.*, No. 98 CIV. 0973(JSM), 2000 WL 1863762, at *3 (S.D.N.Y. Dec. 20, 2000).

Because the FMLA does not provide for intermittent leave to gain an educational benefit, the BOE's decision to terminate Plaintiff for using the leave for an unintended purpose cannot be deemed to be retaliatory. *See Potenza v. City of New York Dep't of Transp.*, No. 00 CIV. 0707(SHS), 2001 WL 1267172, at *9 (S.D.N.Y. Oct. 23, 2001) ("an employee on protected leave is not entitled to any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."). The Complaint is void of any facts that contradict the SCI findings and the Plaintiff admitted to the facts set forth in the SCI Report.

■ Plaintiff cannot establish the requisite causal link through a showing of temporal proximity. Plaintiff's was terminated approximately eight months after returning from FMLA leave. Compl. ¶ 9. The gap between Plaintiff's termination and her exercise of FMLA leave is too attenuated to create an inference of retaliatory intent. *Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 538 (S.D.N.Y.2009); *see Galimore v. City Univ. of N.Y. Bronx Cmty. College*, 641 F.Supp.2d 269, 288 (S.D.N.Y.2009) (citing *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F.Supp.2d 257, 275 (S.D.N.Y.2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.")). Indeed, the passage of more than two months has been viewed as beyond the "any retaliatory nexus." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522(CPS), 2006 WL 842914, at *19, 2006 U.S. Dist. LEXIS 22482, at *55–*56 (E.D.N.Y. Mar. 28, 2006); *Ponticelli v.*

*Zurich American Ins. Group,* 16 F.Supp.2d 414, 436 (S.D.N.Y.1998).

■ Moreover, isolated and stray remarks, without more, are insufficient to raise an inference of retaliation. *See Muhleisen v. Wear Me Apparel LLC,* 644 F.Supp.2d 375, 377, 388 (S.D.N.Y.2009) ("stray remarks [ ] are insufficient to sustain a reasonable inference that defendant was motivated by ... discrimination in its firing of plaintiff, and thereby to satisfy plaintiff's burden of showing pretext"). Comments allegedly made by Ms. Marchese that "Plaintiff committed a felony" or Plaintiff's allegation that Ms. Marchese did not approve Plaintiff's leave request do not satisfy Plaintiff's burden of pleading retaliatory intent. *See* Compl. ¶ 24. The "sheer possibility that [BOE] has act[ed] unlawfully" due to Plaintiff's superior's alleged physical display of displeasure and/or suspicions when Plaintiff requested the leave in March 2010 fails to adequately allege an inference of discriminatory animus as to her termination is August 2011. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *see Tomassi v. Insignia Fin. Group, Inc.,* 478 F.3d 111, 115 (2d Cir.2007) abrogated in part on other grounds by *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination"). "Although [P]laintiff interprets the statements as indicative of discriminatory animus, [Defendant's] comment that [P]laintiff needed to return quickly from maternity leave could also be construed as affirming her importance to [D]efendant.... Accordingly, such statements, without more, are insufficient to salvage [P]laintiff's lawsuit." *Muhleisen,* 644 F.Supp.2d at 388.

Plaintiff's return to work after her leave counters any inference of discrimination Plaintiff seeks to establish. Reinstating Plaintiff to her nursing post upon her return gives rise to an inference that Plaintiff's superior's alleged displeasure was not the catalyst for Plaintiff's termination. *See LeBoeuf,* 2000 WL 1863762, at *4 ("[E]ven if one accepts as true that [an employer] was angry because Plaintiff took his leave at a critical time, the fact that [Plaintiff] was reinstated despite [the] alleged displeasure gives rise to the inference that [the manager's] anger at Plaintiff was not the reason for his termination."). The eight month gap between Plaintiff's discharge and exercise of FMLA leave is too attenuated to create an inference of retaliatory intent to be facially plausible.

Plaintiff has alleged that the BOE's proffered termination decision was actually a pretext for discrimination, because Plaintiff submitted her leave application in March 2010 "well before the time she register" for fall classes and well before the time she knew what classes where available and the respective schedule. Pl. Opp. 15. However, Plaintiff acknowledges that the leave as approved was "for the purpose of attending to her daughter and taking her to physical therapy," that Plaintiff never utilized the leave for its approved purpose, and that during the approved leave period, Plaintiff completed a college course and clinical practicum at the College of New Rochelle. *See* Pl. Opp. 10–12; Declaration of Deborah June Alexander, ("Pl. Alexander Decl.") dated December 29, 2014, at ¶¶ 4, 15, 20.

Relying on a letter dated August 31, 2011, from the College of New Rochelle, Plaintiff contends that the clinical practicum hours could have been completed at various times, including nights and weekends. Pl. Opp. 12. However, the letter is silent with respect to the meeting times of the practicum. *See* Declaration of Stewart Lee Karlin dated December 30, 2014

(hereinafter "Karlin Decl.") Ex. 1 (hereinafter "New Rochelle Letter"). Rather, the New Rochelle Letter only confirms the meeting time of the course Plaintiff completed on Monday evenings from 6:00 p.m. to 8:00 p.m., which was in addition to the required clinical practice hours. *Id.* Alternative hours for the practicum, unknown to the Defendant, fail to establish retaliatory intent.

 Plaintiff has also contended that the only appropriate standard in deciding the present motion to dismiss requires that this Court "take Plaintiff's allegation in [a] light most favorable to the non-movant." Pl. Opp. 13. Where, as here, the allegations pled in the complaint are "contradicted by documents on which the complaint relies" the reviewing court "need not accept as true an allegation" pled nor draw inferences in its favor. *In re Bristol–Myers Squibb Sec. Litig.*, 312 F.Supp.2d 549, 555 (S.D.N.Y.2004).

In sum, the BOE has demonstrated a legitimate nondiscriminatory reason for terminating Plaintiff. It has made an adequate showing by providing evidence incorporated by reference that substantiates its decision to terminate Plaintiff. Plaintiff is unable to invalidate this showing, having not established a lack of credibility as to the reason proffered, or that the discharge was more likely than not motivated by discrimination. Consequently, Plaintiff has not made the requisite showing of retaliatory intent. *See LeBoeuf*, 2000 WL 1863762, at *3.

**No Material Facts in Dispute**

 As the Plaintiff has correctly noted, Defendant failed to submit a Statement of Undisputed Facts, pursuant to Local Rule 56.1, which can be grounds for denial of a motion for summary judgment. However, the Court has "broad discretion to determine whether to overlook a party's failure to comply." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001); *see also*

*Spiegel v. Schulmann*, 604 F.3d 72, 84 (2d Cir.2010). Provided there is support in the record, the Court may choose to accept all factual allegations of the opposing party or opt to conduct an "assiduous review of the record" in deciding this motion. *Osuna v. Gov't Employees Ins. Co.*, No. 11–CV–3631 JFB AKT, 2014 WL 1515563, at *2 (E.D.N.Y. Apr. 17, 2014) (internal quotations and citations omitted). Given that the record contains "sufficient evidence that is easily reviewable" in relation to its size, and the parties have submitted fulsome affidavits which have been reviewed by the Court in the exercise of discretion and judicial efficacy, the summary judgment issues will be resolved.

 The Plaintiff has contended that several material issues of fact exist but cites only to one. Plaintiff argues that "Defendant's exhibits[,] which hint that Plaintiff took the leave in order to obtain time off to take classes and using her daughter's illness as an excuse" is "contradicted by the complaint" and exhibits attached to Karlin's Declaration and Plaintiff's declaration, thereby creating a triable issue of fact. However, it is Defendant's intent, not Plaintiff's, that is material to an FMLA retaliatory claim. *See Genovese v. Goodyear Tire & Rubber Co.*, No. CV–04–4505 SJF AKT, 2007 WL 2746917, at *5 (E.D.N.Y. Sept. 18, 2007) (referencing FMLA retaliation claims where employer's intent is material).

 As concluded above, Plaintiff has the burden of establishing the retaliatory intent element of her FMLA retaliation claim. The evidence presented by Plaintiff is "simply incompatible with and inference of retaliatory intent." *Washington v. Acorda Therapeutics, Inc.*, No. 11 CV 5085 VB, 2014 WL 4467820, at *13 (S.D.N.Y. Aug. 28, 2014). The complaint is void of sufficient facts to rebut Defendant's reason for terminating Plaintiff as determined by the SCI Investigation: her abuse of

332

FMLA leave to obtain an advanced degree. Plaintiff's explanation that she "was never advised that she had to apprise her employer of the need to terminate her FMLA intermittent leave" is rebutted by BOE's prior refusal of her request for leave to complete the clinical program as determined in the SCI Report. *See* Compl. ¶ 20. Moreover, the BOE published a Chancellor's Regulation on its website relating to FMLA leave policy, which provides that "[s]hould it become apparent that it will be possible to resume service earlier than the date originally projected, the employee must notify the principal or office supervisor of that fact as soon as possible." *See* Chancellor's Regulation C–603, § 5 at p. 4, publicly available at http://docs.nycenet.edu/docushare/dsweb/Get/Document–75/C–603_8–1–02.pdf.

Defendant has presented documentary evidence corroborating its termination decision, thereby presenting no genuine issue of material fact. It is undisputed that Plaintiff completed her clinical practicum hours on approximately four Mondays and several Wednesdays between September 15, 2010 and December 6, 2010. Upon learning of Plaintiff's misuse of FMLA leave following Plaintiff's request to be reimbursed for the college course and practicum completed during the relevant period, and after an independent investigation, it is undisputed that Defendant terminated Plaintiff's employment. Consequently, no issues of fact remain with respect to Plaintiff's claims.

**Conclusion**

Based on the conclusions and facts set forth above, the motion of the Defendant to dismiss Plaintiff's Verified Complaint and for summary judgment is granted.

It is so ordered.